May it please the court. My name is Nathaniel Durrance from Perkins Coie, here on behalf of petitioner Janner Valencia Cortes. May I please reserve two minutes for rebuttal? Sure. Thank you. My client, Mr. Janner Cortes, fled Colombia, escaping the well-known and notorious revolutionary terrorist group called FARC. Fortunately, he narrowly escaped with his life and was able to make it to the United States. These attacks on Mr. Cortes occurred immediately after he openly and notoriously rebuked them in front of their church, calling them terrorists, bandits, and refusing their advances. Mr. Cortes petitions for review the BIA decision denying him withholding of removal and relief under the Convention Against Torture. There are two central issues in this appeal. First, the IJ's adverse credibility determination against Mr. Cortes, which is based on the IJ's speculation on how Columbia society and how the Colombian military would operate. These are non-evidence-based assumptions that we can go through one by one. The second issue is the IJ's erroneous assessment that Mr. Cortes was attacked because he was a member of the military. This was an error as well. It's clear that he was approached because he was military, but he was attacked because he openly rebuked them and said that he did not agree with what they stood for. I thought he was attacked because he would not provide them with information about the military bases. When Mr. Cortes was approached by FARC, they asked him to provide information, and this is a perfectly reasonable approach by a terrorist group. You find new military members coming back home, and you squeeze them for information and try to get them to join your group. But he openly refused them. He called them terrorists. He called them bandits. He doesn't want to have anything to do with them. It was at that point that they started to attack him and shooting him. Does that mean he belongs to some political opinion group, that he won't go along with this terrorist group? Well, first of all, expressing your disapproval with a terrorist group like FARC certainly is political opinion, and under the case law, a myriad of things can be considered political opinion. Saying that you're against the terrorist activities of a group, the killings of a group, the anti-government stance of a group. So he's a member of the military, right? Yes. And so one of these groups, which he has sworn to protect the country against, comes to him and asks him for information about the bases, and he turns them down. And you're saying that that is sufficient for him to be a political group or a social group? Or expressing political opinion. Now, if he just simply refused, if they come up to him and say, we want information from you, Mr. Cortez, and he says no and walks away. There's precedent that says that's not enough. In fact, Ricardo Hernandez, I believe is the name of the case, where the court said, and this is post-real ID, they said, if you're approached by a terrorist group and you just refuse, and then they start attacking you, that's not enough. During the IJ hearing, the petitioner in that case said, well, the reason I refused was because I disagree with their stance and their anti-government stance. The IJ said, did you express that in any way to them when you refused? And the answer was no. Now, in that opinion, it suggested that if you had made that expression, then there would have been an expression of political opinion, pro-government, anti-terrorist group, and that would be enough. But simply refusing their advances and walking away is not enough. And indeed, if they wanted to attack him simply because he was a member of the military, they didn't need to approach him and ask him for information. They could have simply just started attacking him. It wasn't until he openly rebuked them, calling them terrorist inbandants, their response was to shoot at him and call him a government toad. Clearly, they saw his pro-government stance. As far as nexus goes here, your argument is that it's based on political opinion, not social group. It's based on, well, his political opinion is part of it, and it could also be his social group. He's a member of a group that is anti-terror. That's a little fuzzy. Granted, granted. But the bottom line is that the – If he expressed a political opinion, you don't need social group, correct? That's correct. And I believe it's based – the basis is political opinion, but the underlying error by the BIA is that they didn't even consider that issue. They simply said you were approached because you're a member of the military. There's no nexus there. If they did not take the step further and actually analyze what his argument was, was that he was attacked because he rebuked them, he rebuffed them, and he did it in a way that made it clear that he was anti-terror. What should we do with the adverse credibility finding? You're asking us to ignore it? Absolutely not. You don't need to ignore that adverse credibility finding. It just was made an error. Now, this Court's precedent is very clear that adverse credibility, post-real ID, you still use the same institutional tools. I mean, STRESPA is very clear. WRIN is very clear. You cannot use conjecture and speculation. If there's conjecture and speculation, that's the underpinning of the adverse credibility determination, then it goes away. And the petitioner can go forward being credible. Now, each of the bases here was based on speculation. For example, the fact that he wasn't killed by FARC despite them shooting at him ten times. I mean, that's just complete speculation based on how accurate their shooting, whether they actually intended to kill him or just give him, you know, torture him or, you know, do multiple attempts at his life. This is pure speculation. I thought that it was that they fired at him ten times at close range and he wasn't even hit. And the crux of the credibility finding, it would appear, is that the story seemed dubious and there was corroboration requested and he wasn't able to provide any even though it would appear that there ought to be some corroboration available. I don't know quite what we do with that. Well, the corroboration was tied to the adverse credibility determination. Yes. Yes. The judge said because I find this adverse credibility, then I'm going to require this corroboration. There was a single hearing. Mr. Cortez was not represented. There was no finding that this requested corroboration was even reasonably available. And, in fact, the testimony makes clear that it's not. He said you can only get it if you appear in person. The IJ says it's not. He produced one piece of corroborating evidence, though, didn't he? He produced. His military card or something.  Something to show that he was in the military. Yes, and this was something. I thought he had left the military card, his military ID with his uncle. He had left it with his grandparents. His grandparents. Yes. And I thought that there was a police report that could be obtained. I thought he testified towards the end that, yes, it could be obtained. He testified that he attempted to get it and they said that it would only be available to him if he came in in person. The IJ then said, well, couldn't you send your uncle or your cousin to go and get it? And he says, I don't know, I suppose. Subsequent to that, after he retained me and we were preparing the appeal, he sent me a letter that he got from his uncle. His uncle actually went in, tried to get it, and they said no. I mean, just like Mr. Cortez testified before the IJ. You can't get it unless you come in. In fact, they think it's not even, it doesn't exist anymore because there was a subsequent FARC attack that destroyed a lot of records. So it's unclear whether it even exists anymore, but it's clear that he couldn't have gotten it. Oh, that's not part of this record. Right. Right. But as far as the adverse credibility determination goes, I mean, the fact that he can get, I mean, it was just pure speculation by the IJ that he could not get on the military base without his ID or that they wouldn't be able to recognize him when he came out of the church or was at the soccer field. He testified that he grew up, a lot of his peers joined FARC at the time he joined the military, and it's perfectly reasonable that when he comes back from furlough that they see him with his military haircut and say, okay, just, you know, our plan is to go and squeeze people coming back from the military. Wait. Isn't that speculation, counsel? Exactly. Just as the same. Well, who's got the burden of proof at the immigration hearing? The petitioner has the burden of proof, but the clear standard is that you cannot base an adverse credibility determination on speculation. And so just like IJ. Didn't the IJ say that she was basing her decision based on the totality of the evidence, the totality of the circumstances? The totality of the circumstances in light of the improper speculation that, so in other words, the totality of I don't believe that you can get on the base without your ID. Why? I don't believe that they would have recognized you or have been able to approach you when you came out of the church. That's the totality that the judge was talking about. But if I understand your argument, basically what you're saying is that we disregard what the IJ found and whatever reasoning she used to arrive at her opinion, and we essentially adopt and give credit to everything that the petitioner said at the immigration hearing. That's basically your position. No. The position is that the adverse credibility determination should go away because the pillars are all based on speculation. On remand, the IJ can then make a new decision and decide whether they believe the burden has been met despite this petitioner being credible. That may not be enough in the end. We just don't know. Under the Real ID Act, even a complete credible testimony. Thank you. You're over your time. We appreciate your argument there. We'll hear from the government. May it please the Court, Dan Shea on behalf of the United States government. The petitioner in this case served in the Colombian Army and seeks withholding of removal and cap protection because the FARC, a terrorist group, sought military information and help from him. As the Petitioner's Counsel correctly noted, there are two separate issues in this case, and I would add that these are independent grounds for denying the petitioner for review. So if he fails either one, this petitioner for review should be denied. I would also add that, like a house with many stilts, the adverse credibility determination, any one of those findings alone is sufficient to sustain the adverse credibility determination. They all seem to be based on the IJ's own sense of what's appropriate, his notion of how things should be. It is her analysis of what is plausible. That's correct. Under the Real ID Act. I mean, she doesn't hook it on to some report or some study or something. It's just her own personal sense. Yes, Your Honor. How things should be. Your Honor, I think under the Real ID Act, the immigration judge is allowed to determine the language of the Real ID Act as the inherent plausibility of an account. So it's not just. So it's not based on nothing but speculation and conjecture. It's not grounded in anything. Right. And as Judge Benitez pointed out, she looked at the totality, the circumstances. Now, she looks at these. Let's just go through one. Tell me the first one, for example. The IJ's finding that it was implausible the FARC would know that Cortez was a member of the military. What did she base? She based it on the inheritance. What was the factual predicate for that? He testified that he came from a small town, correct? Correct, Your Honor. And that he went to school with the same group of kids, right? Correct. And he testified that many of his schoolmates went on and joined the FARC and he went and joined the military. He testified that he didn't know anybody personally who joined the FARC. But he testified that some of his classmates went and joined the FARC. May have joined the FARC, right. But he didn't know of any in particular who joined the FARC. Okay. So why is it so implausible that coming from a small town, a small community like this, that people wouldn't know that he went on into the military? I think there's just a lot of links that he has to jump through. I mean, the two men who came to approach him to ask him for help, they didn't know him. He said he didn't know who they were. And then to know where he was was another story. How did they know where to find him? And then they found him on the soccer field. And then they found him at the police station. And it's the same two men who never knew him before. And he never testified to knowing anybody from the FARC. And so really, you know, I think a good way to summarize the defense of the credibility, well, the petitioner's arguments against the credibility finding is, look, I'm going to put forth one plausible explanation. And it's one of many. And it's not even ones that maybe I stated explicitly to the IJA. But you know what? Because there is one plausible explanation that the agency was required to accept. And I think that's exactly what we have. Did she ever address his explanation? I think she does address some of her explanations. But she still comes to the conclusion, I believe, that these were improbable. How about the, how about the, you know, she finds it implausible that he could get on the military base without his military, the badge or whatever it was he needed that he said he lost. She says, well, that's, you know, that's not going to happen. Well, I think there's two parts to that finding. And I think when you look at it carefully, I think it is implausible. So it's not just that he forgot his badge. It was that he had packed up his suitcase, and he was going to go make a police report, and then he was going to go back to the military for what he said would be a 20, 25-year military career. And so he didn't say he forgot the military ID. He said he left the military ID intentionally with his grandfather for safekeeping. So setting aside, so there's one issue of could he even get on base if there's a FARC problem in this country, there's a terrorist problem. Could he even get on a secure military installation without his ID? But even if he could, let's say it's a small base and he can get on, then the next question is why would he want to get on every single day for 20, 25 years without a badge? That was issued for the purpose of him getting on. Counsel, I have a question for you. This has been troubling me. It may be speculation on my part, perhaps, I suppose. But putting myself in the IJ's shoes, I'm thinking, now, okay, so he left his military ID with his grandfather. Then they chased him down. Now, he was on his way to the base. In order to get to the base, he had to take a boat. Now, when these folks assaulted him, allegedly, he took a boat. But the boat went to Panama. It didn't go to the base. I don't know. I'm sitting here thinking, boy, if I was the IJ, I'd be asking that question. Of course, you can say, well, that's speculation. But then that basically means that what we have to do is just adopt whatever the petitioner says because we can't really scrutinize it. You agree that the IJ said that she considered the totality of the circumstances. In other words, she didn't focus on any particular item. She took a look at the whole thing, all the demeanor of the witness, what he said, when he said it, and then she arrived at a conclusion. Right? Right. I would suspect you'd agree with that. She made an inherent plausibility for me. Okay. I think now I could. Let me ask you this. Let's shift to the they made an alternative decision. Right, Your Honor. Even if you were to eliminate the credibility determination, we would have to address the. . . Yes, Your Honor. Right? And I would say that. . . So he did testify that he said to the FARC that he viewed them as a terrorist organization or whatever words he used. I mean, he expressed his feelings about FARC. Yes, Your Honor. So let me. . . Why isn't that political opinion? Let me address the preliminary standard first, and I'll explain why that's not political opinion if Your Honor will give me just a few seconds. I think what hasn't been raised by the petitioner in this brief is the different standard review governing post-real ID cases. It's not just a simple expression of political opinion can show that he was persecuted because of his political opinion. It's got to be something more. It's got to be something heavier. And so every single case the petitioner cites to show his political opinion predates 2005. I think the latest one is 2002. These are all post-pre-real ID cases. Under the Real ID Act, this Court held in Parisimova that the standard is different now. It overturned Borja. Borja held that to show motivation, it's got to be at least in part. So we don't know what percentages that works out to, but it's a much lighter burden of proof. Under Parisimova, under the Real ID Act, the motivation has to be one central reason why they persecuted this person. So here, the entire evidence for his political opinion against the FARC is one sentence. One sentence, and there's nothing else from the FARC that says, well, we're really offended by what you just said, now we're going to persecute you because of it. Everything else seems to suggest that you didn't help us. You didn't give us information, and now we're going to get you. I mean, the sentence is this. It's one sentence. I said I'm not a bandit. I'm not a criminal. I'm not much less a terrorist. He didn't even directly call them a terrorist. It's more of an implication that I'm not one of you. Did the BIA address his argument or his contention that what he said was political, was an expression of political opinion that would qualify as a protected ground? I think the nexus finding and whether it's a protected ground are two independent findings. Sometimes those two can get conflated. So it's one thing to determine whether somebody has expressed a political opinion. It's one thing to determine. Well, did they address whether he expressed a political opinion or not? No, they addressed the prior, the preliminary. It comes even before that, which is was it on account of. So it's one thing to say whether or not Mr. Cortez expressed a political opinion when he said what he said to the FARC, but it's another thing to say that that was the reason why they persecuted him. Because they found that they contacted him because of the military. Right. So because he couldn't show nexus, they never needed to reach the question of political opinion. And just to address briefly the question of political social, that issue was not raised in the petitioner's opening brief, and it wasn't briefed by us. So that issue is waived, Your Honors. So quite simply in the past. I'm sorry. So which precise issue is waived? The protected social group. The only question before the Court is whether or not he was persecuting accounts of political opinion. Right. So going to the political opinion question, I just wanted to raise a few issues. I think the one sentence is followed up by much evidence in the record that basically says they're persecuting him because he refused to help them. So I can read you from the record, AR 132. He testifies, they told me since I had refused, they said, I'm not going to live to tell the story because no one says no to us. Now, you would think that if they were offended by him expressing a political opinion, they would say something like, no one calls us a terrorist. But it seems like no one says no to us means he just refused to help us. And there's nothing else in the record that even hints that they were offended by his one statement to them. And in the parisimova, where the petitioner was actually persecuted when she was being hit, they said they called her ethnic slurs. They found that even that was not enough. An insult stated in the course of committing a crime is not enough to show nexus. Was his testimony that they shot at him ten times after he said that he didn't like FARC? I believe he was shot at after he refused them. So I don't think it's clear. I think they actually just totaled it all up. As I recall, he testified that he was shot at at the football field. Right. Right? The first time. It was a total of like ten. The IJ said it was a total of ten shots or something. Ten bullets, not ten incidences of being shot. Right. Ten bullets. Ten bullets being fired. So if you're honest, I have no further questions. We would rest the rest of our arguments on the briefs. Okay. Thank you. Thank you. You have one minute. That's it. Okay. One minute. That's all I need. So on the question of nexus, there's several post-Real ID cases that make it clear that immediate attacks after refusal to join and expression of disagreement on a group, that's political opinion. That meets the nexus requirement in the Real ID Act. That's Hugh versus Holder, and it cites with approval Borgia. Now, Borgia, again, says no reasonable fact finder could not see the role that the outspoken rebuke followed right after they tried to get you to join the organization method of nexus requirement. Is there a case, counsel, where there were two plausible reasons why the petitioner might have been attacked, if you will, one of which would constitute a nexus, in other words, would put him or her within a protected group, and the other one would not? Is there a case that says that the IJ is required to adopt that which would put the individual in the protected group and reject the other? I don't believe that there's a case that specifically says that. But the question here is the IJ didn't even address his argument. The IJ ignored it. So on reban, the IJ should properly address whether or not he was attacked because of political opinion, not simply because he was a member of the military. And the case law makes it clear that in situations where you're approached by a terrorist group, you refuse their advances and make a statement out against them, and you're attacked. That's clear evidence of nexus. It's not whether it's one central reason or not. It's no reasonable fact finder couldn't find that. And you'd find that in Borgia as well as Hugh versus Holder, which cites Borgia with approval. And finally, just with regards to adverse credibility, it has to be an evidence-based finding. If there was some evidence in the record that the court pointed to and said, you were not allowed to get on base without an ID, and here's why, there has to be some evidence to base the speculation on here. And there was no demeanor issues. There was no candor issues raised. None of that. It was simply speculation. Thank you. Yes. Thank you for your arguments. We appreciate them. And the matter is submitted at this time.
judges: Benitez, Schroeder, Paez